(#1) Exhibit "C" #5 1-14

**STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS**

**PROVIDENCE SC**

**SUPREME COURT**

Court Original

**CASE NO.** 04-367

STATE OF RHODE ISLAND

V.

KEVIN SMITH

06 JAN 13 AM 10:17

**AMICUS CURIAE IN RELATION TO COPY AND POSTAGE COSTS**

**OF A PRO SE BEING ENCOMPASSED IN 42-56-22(b)**

## INTRODUCTION

The petitioner filed an Eighth Amendment Civil rights lawsuit, inter alia, in May 2004 against A.T. Wall and several other staff members. Roughly one week later, the petitioner was wrongly terminated from his job at the prison for an error which occurred at the prison plate shop when the petitioner was not even present.

The petitioner has no outside assets and survives on his menial prison pay. Because the petitioner was unemployed and had no financial assets to effectively litigate and pay for postage and copy costs , accompanied by the fact that I was refused counsel, the petitioner had no choice but to act "pro se".

The Petitioner filed a motion requesting the Court order the Department of Corrections, (DOC), to provide access to my Frozen funds on December 17 2004.

The District Court denied my motion basing it's decision on the fact that no order was necessary to access my frozen funds under section (b) of R.I.G.L. 42-56-22, on January 13 2005 found as Exhibit "A".

A.T. Wall, Director of the DOC has agreed through his own pleadings of District Court Case 05-0158(ML), that a Court Order was not necessary to access such funds based on the language of 42-56-22 section (b), found as Exhibit "B"

Counsel for the DOC now seek to circumvent and reinterpret the language to 42-56-22 (b) and preclude the use of Frozen funds "for the filing, prosecution, and defense of any action" of which "nothing contained in the section shall prevent the use of the funds....."

## ARGUMENT

The petitioner is involved in a civil litigation now pending in the Court of Appeals for the First Circuit and has also litigated in Rhode Island District Court. The petitioner has no constitutional right to the appointment of counsel in civil litigation and as a result has been forced to litigate "pro se", Plaintiff Smith is also acting pro se.

It is understood that through the controling precedent such as **KEENAN V. VOSE 634 A2d 866,868**, that funds within the scope of R.I.G.L. 42-56-22 can not be used to apply towards the cost of an attorney. However, that is far from the question at hand and is irrelevant to the subject matter before the court. Both the petitioner and plaintiff Smith are pro se and not requesting that funds be appropriated for the appoinment of counsel. The question before the Court is "Does the language of R.I.G.L. 42-56-22 (b) include the expenses of postage and copy costs associated with the pro se's prosecution and defense of any action ?"

It is unlikely that those acting pro se are doing so by their own choice, the fact that an indigent incarcerated prisoner is forced to act pro se, should not effect the ability to effectively litigate.

First of all, Counsel's allegations that an indigent prisoner who can not afford postage or does not have money in their account are not charged for postage for legal mail do not ring true. In fact it is quite the opposite and the DOC does not absorb costs of legal postage of indigent inmates. Exhibit "C", represents copies of money transfer slips used to pay for legal postage. The Money Transfer Slips have been marked as "indigent" by superior officers. These slips were filled out during a period of time in which I was indigent by prison policy. Accompanying these transfer slips are money ledgers which unequivocally show I was charged a negative balance despite no funds in my open a-ccount. Never during my many Months of indigency did the Department of Corrections ever pay for the postage of any of my legal mail. In fact, Exhinbit "D" is a current money ledger which reflects that despite I have no money in my active account to cover legal postage, that the DOC has put me in a negative balance or debt for such costs. Thus it appears, that counsel seems to be unfamiliar with prison policy or are misleading the Court. That statements made in the "RHODE ISLAND DEPARTMENT OF CORRECTIONS' REPLY AND OBJECTION TO DEFENDANT'S MOTION TO ACCESS ENCUMBERED FUNDS", in STATE V SMITH, CASE NO. 04-367 do not ring true. Statements such as "If the Inmate has no means to pay for the postage, it is sent out at the DOC'S expense" or "if there are no funds in the open account the mail is sent out regardless, and no negative balance acrues to the inmate". Her representation to the court that the DOC only takes 50% of the Inmates pay and appropriates it toward the negative debt also does not ring true, as they devour your whole pay and appropriate it to-wards the negative debt, which will certainly be done to me this upcoming pay of January and February of this year, as it has in the

past. Please see Exhibit "E" from the DOC OFFICE OF LEGAL COUNSEL, advising me that I will have access to my encumbered funds for litigation expenses.

It is understood that the modern day financial burdens associated with the costs to house and care for inmates has somewhat compromised the spirit of case law such as **SOUDER V. MCGUIRE, 516 F2d 820,** referencing indigent litigants as stated, "We do not think that prisoners must totally deprive themselves of those small amenities of life which they are permitted to acquire in a prison or a mental hospital beyond food, clothing, and lodging already furnished by the state. An account of $50.07 would not purchase many such amenities; perhaps cigarettes and some occasional reading material. These need not be surrendered in order for a prisoner or a mental patient to litigate....."

In an effort for prisons to relieve the burden often imposed upon the taxpayers, Inmates are forced to now provide at their expense personal hygiene items such as soap, shampoo, deoderant, razors , shaving cream, toothpaste ect., and also tee-shirts, boxers and socks as well. Currently an inmate who is relieved from his employment must wait two months in which no deposits have been made in hisor her account to be considered indigent by prison policy. If the inmate does not have enough cosmetics to last this two month period, he or she must go without.

Inmates who are subject to litigate and their copy and postage costs exceed their prison pay, such as myself, <u>are</u> placed into a negative balance. I expect that the DOC will devour my next pay of January and February 2006, and the taking of 50% and leaving 50% for commisary purchases will be ignored as it has in the past.

The point being, is that a drastic change has evolved from the Courts position in SOUDER SUPRA., of allowing prisoners the small amenities of prison life, to now subjecting inmates to choose between manintaining personal hygiene and proceeding with his or her litigation. Those who's pay is devoured through postage and copy costs in litigation are ineligible to obtain indigent status per prison policy. Certainly this Court should not expect those who take advantage of their First Amendment right to petition the government for a redress of grievances should not be at the cost of compromising one's health. The petitioner asks the Court to look to Exhibit "F" and observe the following;

1) On 1/14/05, My prison pay was appropriated to my account of $14.50¢, in which 25%, in the amount of $3.62¢ was appropriated to my encumbered account, leaving me with an available balance of $10.87¢ in my open account.

2) This very same day, $3.00 was deducted for past copies, then they deducted $4.25¢ for legal copies, resulting in an available balance now of $3.62¢.

3) This very same day of 1/14/05, the remaining available $3.62¢ was removed for copy costs resulting in all my prison pay confiscated in one day.

Thus, the DOC'S Counsels statement that they only take 50% from your inmate pay and leave 50% for commisary purchases also does not ring true as the above exhibit "F" unequivocally shows that I was completely stripped of my prison pay.

Wherefore, I pray the Supreme Court agree that the language of 42-56-22(b), remains clear and unambiguous in relation to the postage and copy costs being within the scope of section (b) and that the Court affirm the United States District Courts order of

January 13 2005, stating that no Court order is necessary to access the funds to pay for Court costs. That 42-56-22(b) encompasses costs such as copy costs and postage costs for those acting pro se "for the filing,prosecution, and defense of any action".

Respectfully

STEPHEN REISE PRO SE
P.O. BOX 8274
CRANSTON, RI, 02920

[signature]

**CERTIFICATION**
**28 USC 1746**

I swear upon penalty of perjury that a true copy of this document was placed in the interdepartmental mailbox, postage pre-paid, on this 6 day of January 2006, and sent to the persons below;

KATHLEEN KELLY ESQ.
DEPARTMENT OF CORRECTIONS
40 HOWARD AVE.
CRANSTON, RI, 02920

[signature]

Exhibit "A"

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**STEPHEN REISE**

v. C.A. No. 04-158 ML

**A.T. WALL**, Director of the
Rhode Island Department of Corrections, et al.

**ORDER**

This matter is before the Court on numerous motions. The Court shall address each motion separately.

1. On December 23, 2004, plaintiff Stephen Reise filed with the Court a motion to access his "frozen funds" on account with the Rhode Island Department of Corrections to pay for costs associated with the prosecution of this lawsuit. The Attorney General, on behalf of defendants Marocco, White, and Wall, filed a response indicating that no Court Order is necessary for the plaintiff to access the funds to pay for court costs. Accordingly, upon consideration of the motion, and of the Attorney General's response, said motion is **DENIED**.

2. On December 23, 2004, plaintiff Stephen Reise filed with the Court a "Motion to File a Supplemental Pleading to my Supplemental Complaint." Defendants have objected. After consideration of the motion, and of the objections thereto, said motion is **DENIED**. Discovery closed in this case and dispositive motions are due by January 21, 2005.

3. On January 5, 2005, defendants A.T. Wall, Joseph Marocco, and Melvin White filed a motion to extend the time in which pre-trial memoranda are due. After consideration of the motion, said motion is **GRANTED**. Pre-Trial Memoranda are due, if necessary, two weeks after the resolution of dispositive motions.

065

IT IS SO ORDERED.

Jacob Hagopian
United States Magistrate Judge
January 13, 2005

245

#7

Exhibit "B"
Pg 1 of 2

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

STEPHEN REISE
Plaintiff

v. U.S.D.C. No. 04-158ML

ASHBEL T. WALL, JOSEPH MAROCCO
SCOTT ALLEN, BARUH MATOLA, MEL
WHITE, sued in their individual and official
capacities
Defendants

**DEFENDANT'S A.T. WALL, JOSEPH MAROCCO, AND MELVIN WHITE'S RESPONSE TO MOTION TO ACCESS FROZEN FUNDS TO PAY OFF LEGAL COSTS OF POSTAGE AND COPIES**

Now come the Defendants, A.T. Wall, Joseph Marocco and Melvin White and respond that Plaintiff does not need to move this court for an order since R.I. Gen. Laws §42-56-22(b) provides that "[n]othing contained in the section shall prevent the use of the funds in the account for the payment of any court fees and court costs required to be paid for the filing, prosecution, and defense of any action." A copy of the statute is attached.

Respectfully Submitted,
Defendants,

A.T. Wall, Joseph Marocco
and Melvin White

# TITLE 42
# State Affairs and Government

## CHAPTER 42-56
## Corrections Department

### SECTION 42-56-22

§ 42-56-22 **Labor by persons committed on mesne process or to answer criminal charge.** – (a) Every person who shall be committed to the adult correctional institutions to answer for any criminal offense, whether convicted or awaiting trial, or on mesne process in any qui tam or penal action, or on mesne process or execution in any civil action, may be permitted to labor in the discretion of the director, or his or her designee, for the state, and in that case may be paid not more than three dollars ($3.00) a day for every day he or she shall labor with the express consent of the director, or his or her designee, of the department, to be credited to the prisoner's account by the assistant director of administration, or his or her designee, and to be disbursed to the prisoner in accordance with the rules and regulations of the institutions; provided, further, however, there shall be maintained on account at all times at least twenty-five percent (25%) of the earnings of each prisoner up to a maximum of one hundred dollars ($100) for those persons serving a sentence of life imprisonment without parole under §§ 11-23-2, 12-19.2-1 et seq., and up to a maximum of five hundred dollars ($500) for all other prisoners; those funds to be turned over to the prisoner at the time of his or her release from the institution, the funds being his or her property; the moneys to be paid to the prisoner by order of the assistant director of management services upon the general treasurer.

(b) Nothing contained in this section shall prevent the use of the funds in the account for the payment of any court fees and court costs required to be paid for the filing, prosecution, and defense of any action.

ATTACHMENT