**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **KEVIN J. SMITH** | : | |
| **Petitioner** | : | |
| | : | |
| **v.** | : | **C.A. 2006-553ML** |
| | : | |
| **ASHBEL T. WALL, ET AL** | : | |
| **Respondent** | : | |

**STATE OF RHODE ISLAND'S MOTION TO DISMISS "PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY"**

Now comes the State of Rhode Island, by and through its attorneys, and, for the reasons expressed in the accompanying memorandum, respectfully moves to dismiss Petitioner's *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody.*

**STATE OF RHODE ISLAND**
By Its Attorneys,
**PATRICK C. LYNCH**
**ATTORNEY GENERAL**

/s/Aaron L Weisman_________
**AARON L. WEISMAN #4438**
Department of Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400

**CERTIFICATION**

Pursuant to AP 10 of this Court, effective August 1, 2006, I hereby certify that on the 13th day of February, 2007, I filed this document electronically and that it is available for viewing and downloading from the ECF system; and, I placed a copy of the within document in the U.S. mail, postage prepaid, to Kevin J. Smith, at his last known address of 6743 Flat River Road, Greene, Rhode Island 02827.

/s/ Aaron L. Weisman____

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **KEVIN J. SMITH** | : | |
| **Petitioner** | : | |
| | : | |
| **v.** | : | **C.A. 2006-553ML** |
| | : | |
| **ASHBEL T. WALL, ET AL** | : | |
| **Respondent** | : | |

**STATE OF RHODE ISLAND'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS "PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY"**

Background

On July 13, 1998, Petitioner/Appellant Kevin J. Smith pled *nolo contendere* in the Kent County, Rhode Island, Superior Court (Gemma, J.) to having, in Coventry, on April 26, 1997, operated a motor vehicle with a blood alcohol level of more than twice the legal limit, resulting in the death of Marie Demers and serious bodily injury to Constance McGregor (Tr. of the July 12-13, 1998 plea proceeding at 3-4); the two women, elderly sisters, were returning from a weekly Church Service/social event when Mr. Smith, while operating his vehicle with a blood-alcohol level in excess of .20, struck the vehicle in which the two women were traveling (*id.* at 9-11).[1] In consideration of Mr. Smith's plea to these two most-serious DUI offenses, he was sentenced by Justice Gemma to a cumulative term of fifteen years incarceration at the Adult Correctional Institutions (ACI), the first twelve of those years to be served, the remaining three suspended for a three year probationary period. (*Id.* at 12-15.) This sentence "had been agreed upon by

[1] A granddaughter of Ms. Demers emotively recounted, at Mr. Smith's sentencing, what an extraordinary woman Ms. Demers was, and what a very painful death she endured as a consequence of Mr. Smith's actions on April 26, 1997. (July 12-13, 1998 plea proceeding at 10-11.)

all parties" (*id.* at 15), and included a provision "that after the defendant serves one sixth of the twelve year sentence, that is two years, he will then be ordered into the minimum security work release unit of the Department of Corrections." (*Id.* at 15.)[2]

While it appears that Mr. Smith was indeed, approximately two years into his sentence (in August of 2000), placed into the ACI's minimum security/work-release program, he was, approximately five-weeks later, removed from that classification by the Department of Corrections (Department) for a disciplinary booking which was later overturned. He was not placed back into the minimum security/work-release program for another (approximately) fourteen-months.[3] Principally as a consequence of this Departmental action, Mr. Smith subsequently filed, in October of 2003, an application for post-conviction relief, apparently seeking the vacation of his agreed-upon judgment and sentence on the ground that 1) his sentence was illegal, 2) he was insufficiently aware of the consequences of his plea, and 3) his counsel was constitutionally ineffective. At length, the Superior Court (Vogel, J.) – after reviewing Petitioner's (voluminous) pleadings and a Department of Corrections' legal memorandum, and conducting independent research – orally rendered a February 19, 2004 seventeen-page transcribed decision rejecting Mr. Smith's post-conviction relief contentions. In that decision, Justice Vogel determined that 1) although that portion of the sentence directing Petitioner's

[2] This sentencing provision was reiterated at a July 12, 2000 proceeding before Justice Pfeiffer, reflected in a written *Order* of that date to that effect.

[3] Petitioner, then, appears to have been in the minimum security work release unit of the Department of Corrections from August 2, 2000 until his removal on September 7, 2000. He was returned to that Unit on November 2, 2002, and remained there until his removal (for another discipline) on April 30, 2003. Petitioner was ultimately paroled to home confinement on November 24, 2004, where he, to the best information of the undersigned, remains to this day.

placement into the DOC's minimum security work release unit was "technically illegal" (*Decision* at 9), the issue was "moot" (*id.* at 10, 11); and 2) as the Director of Corrections' discretion to remove inmates from work release is a collateral, and not a direct, consequence of a plea, Petitioner was not entitled to vacate his plea, either on the basis of his unawareness as to such collateral consequence or on ineffective assistance of counsel grounds (*Decision* at 11-16).

Petitioner then challenged these Superior Court determinations before the Rhode Island Supreme Court. The Rhode Island Supreme Court, in an order issued on November 10, 2006, rejected Petitioner's assertions, and affirmed the *Decision* of the Rhode Island Supreme Court. In so doing, the Rhode Island Supreme Court determined as follows:

> The applicant, Kevin J. Smith, appeals *pro se* from the Superior Court's denial of his application for postconviction relief. This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. After examining the written and oral submissions of the parties, we are of the opinion that the appeal may be resolved without further briefing or argument. For the reasons set forth herein, we affirm the order of the Superior Court denying the application for postconviction relief.
>
> On April 26, 1997, applicant's automobile struck a second motor vehicle, causing the death of the latter's passenger and seriously injuring its driver. At the time of the incident, Mr. Smith had a blood alcohol level in excess of 0.20. On June 12, 1998, he entered into a plea agreement in which he pled *nolo contendere* to the charges of driving under the influence, resulting in death (count 1), and driving under the influence, resulting in serious bodily injury (count 2). Two other charges were dismissed. As part of the plea agreement, the state recommended, and the sentencing justice accepted, a sentence of fifteen years at the Adult Correctional Institutions (ACI), with twelve years to serve on count 1, and a consecutive sentence of ten years suspended on count 2. Mr. Smith acknowledged that the plea agreement included an order that, after he had served one-sixth of his sentence, or two years, he would be placed in "minimum security work release." Before accepting the

plea, the sentencing justice said that he had spoken with the director of the Department of Corrections (director), who had indicated that said department would honor this agreement.

Mr. Smith was indeed incarcerated at the ACI, but as the two-year mark of his sentence approached, the department balked at placing him in work release in the absence of a specific court order. The applicant, therefore, filed a motion to clarify sentence that was granted without objection. An order sentencing him to work release was entered on July 12, 2000.

Mr. Smith was transferred to the minimum security work-release program, but for various reasons he never actually participated in work release. On September 7, 2000, he was removed from the program after his urinalysis tested positive for amphetamines. He successfully appealed the disciplinary action, demonstrating that his prescribed medication may have caused a false-positive test result. His request to return to the work-release program was denied, however, because of additional disciplinary infractions. He eventually was returned to minimum security, in November 2002, but he again was removed, in April 2003, for possessing contraband.

On October 30, 2003, Mr. Smith filed an application for postconviction relief contending that his sentence was illegal and therefore void, that he was not fully informed of the potential consequences of his plea agreement, and that he received ineffective assistance of counsel because his attorney did not inform him of such consequences. On February 19, 2004, a Superior Court justice denied his application, and this appeal ensued.

After carefully reviewing applicant's lengthy memorandum and exhibits, and after considering his oral arguments, we are satisfied that the postconviction relief justice neither committed error nor misconceived material evidence in denying Mr. Smith's application. We also have reviewed the transcript of Mr. Smith's plea colloquy, and we are convinced that the sentencing justice thoroughly and carefully explained to him the nature of the plea agreement, as well as the constitutional rights he was about to waive, before finding that "defendant has the capacity to understand the nature and consequences of his plea ***." Clearly, the sentences imposed of fifteen years on count 1 and ten years on count 2 do not exceed the statutory maximum periods of incarceration for the respective offenses.

Nor are we persuaded by applicant's contention that his plea must be vacated because the trial justice lacked the statutory authority to order him into minimum security work release after he served one-sixth of his sentence. [FN1] Not only did Mr. Smith specifically agree to this arrangement, but also he moved, through counsel, for an order clarifying the sentence before he completed

two years at the ACI. An order was entered, without objection from the state, under which he, in fact, was placed in the work-release program.

FN1. General Laws 1956 § 12-19-2(b) provides:

“The court upon the sentencing of a first time offender, excluding capital offense and sex offense involving minors, may in appropriate cases sentence the person to a term of imprisonment, and allow the person to continue in his or her usual occupation or education and shall order the person to be confined in a minimum security facility at the A.C.I. during his or her nonworking or study hours.”

We never have held, nor do we now, that a person placed in the work-release program has a right to remain in the program. Rather, we have recognized the authority of the director to impose conditions and restrictions on an inmate’s participation, as well as the director’s implicit authority to determine “when [an inmate] is subject to removal therefrom.” State v. Pari, 553 A.2d 135, 138 (R.I.1989). Here, Mr. Smith was removed from the program for various disciplinary infractions, one of which he successfully appealed, and he eventually earned his way back to minimum security, only to be removed again.

The fact that Mr. Smith may not have fully appreciated the possibility of his being removed from the work-release program for disciplinary infractions is not grounds for vacating his plea. “A defendant need only be made aware of the direct consequences of his plea for it to be valid.” Beagen v. State, 705 A.2d 173, 175 (R.I.1998) (quoting State v. Figueroa, 639 A.2d 495, 499 (R.I.1994)). “A consequence is deemed collateral, rather than direct, if its imposition ‘is controlled by an agency which operates beyond the direct authority of the trial judge.’” *Id.* Clearly, the discretion to remove Mr. Smith from the work-release program rested with the director. The possibility of removal from work release was thus a collateral consequence of the plea, and the trial justice had no obligation to inform him of that possibility.

So, too, is Mr. Smith's allegation of ineffective assistance of counsel without merit. “In reviewing a claim for ineffective assistance of counsel, we have stated that the benchmark issue is whether ‘counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.’” Bustamante v. Wall, 866 A.2d 516, 522 (R.I.2005) (quoting Toole v. State, 748 A.2d 806, 809 (R.I.2000)). To succeed on an allegation of ineffective assistance of counsel, an applicant must demonstrate that trial counsel’s performance was so deficient that counsel did not function at the level guaranteed by the Sixth Amendment and that such deficient performance was

> prejudicial to the defense to such an extent that it deprived the applicant of his right to a fair trial. ***Id.***; ***see also*** Hassett v. State, 899 A.2d 430, 437 (R.I.2006). As noted above, defense counsel was not required to inform Mr. Smith about the collateral consequences of his plea, and thus Mr. Smith cannot succeed on his allegation of ineffective assistance of counsel.
>
> For the reasons stated herein, we affirm the order of the Superior Court. The record in this case shall be remanded to the Superior Court.

(State v. Smith, 909 A.2d 40 (R.I. 2006).)

Discussion

Petitioner's instant 28 U.S.C. § 2254 challenge to the above-quoted determination of the Rhode Island Supreme Court, is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996, which, in relevant part, provides that no habeas corpus petition filed by a person in state custody shall be granted unless the state court adjudication underlying petitioner's conviction "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1); (d)(2). Williams v. Taylor, 529 U.S. 362, 404-05, 120 S.Ct. 1519 (2000). In Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850 (2002), the Supreme Court elucidated further on this amendment to federal habeas law, emphasizing that the "contrary to" and "unreasonable application" provisions set forth in § 2254 (d)(1) have independent meaning. A federal court may grant habeas relief pursuant to the "contrary clause" if the state court "applies a rule different from the governing law set forth in [the United States Supreme Court's] cases, or if it decides a case differently than [the United States Supreme Court] has done on a set of materially

indistinguishable facts." ***Id.*** The writ may also be granted under the "unreasonable application" clause in cases where the state court has correctly identified a legal principle derived from a United States Supreme Court decision, but unreasonably applies it to the facts of a particular case. ***Id.*** This latter inquiry centers on "whether the state court's application of clearly established federal law is objectively unreasonable." ***Id.*** Quoting Williams, the late Chief Justice Rehnquist, writing for the Court, stressed that "an unreasonable application is different from an incorrect one;" in other words, "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" ***Id.*** (citations omitted).

The United States Court of Appeals for the First Circuit has interpreted the "contrary to" clause of § 2254 to apply only in situations in which a state court "either applies a test that is inconsistent with one announced by the [United States Supreme] Court or reaches the opposite conclusion on materially indistinguishable facts." Rashad v. Walsh, 300 F.3d 27, 34-35 (1st Cir. 2002). Turning to the "unreasonable application" prong of the statute, a state court is guilty of such when it applies a correct legal standard in an objectively unreasonable manner, unreasonably extends a Supreme Court precedent to an inappropriate context, or fails to extend such a precedent to an appropriate context. ***Id.*** The "unreasonable application" standard, as the First Circuit Court of Appeals observed in Rashad, "does not demand infallibility: a state court's decision may be objectively reasonable even if a federal habeas court, exercising its independent judgment, would have reached a different conclusion." 300 F.3d at 35

The First Circuit Court elaborated on this point further in McCambridge v. Hall, 303 F.3d 24 (1st Cir. 2002), again emphasizing that under Williams v. Taylor, an "erroneous application" of Supreme Court precedent is not necessarily equated with an "unreasonable application," as "the mere fact that there was some error or that the state decision was incorrect is not enough." The "unreasonableness" of the ruling must be incrementally "great enough to make the decision unreasonable in the independent and objective judgment of the federal court." "If it is a close question whether the state decision is in error, than the state decision cannot be an unreasonable application." McCambridge v. Hall, 303 F.3d at 36-37. As examples of state court decisions that might be considered unreasonable, the First Circuit Court cited decisions that are devoid of support in the record or that exhibit arbitrary or capricious reasoning. ***Id.*** Moreover, while state court decisions must comply with those United States Supreme Court holdings that are clearly established at the time of the state rulings, it is appropriate for this Court to consider factually similar cases from other lower federal courts in assessing the reasonableness of the state court ruling in issue. Ouber v. Guarino, 293 F.3d 19, 26 (1st Cir. 2002).

As a final point, it should be noted that under § 2254 (d)(1), "a state court's factual findings are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary." Rashad, 300 F.3d at 35. Unless petitioner carries this burden, a federal habeas court is obliged to credit the factual findings of state courts at the trial and appellate levels. *Id.* This includes those reasonable inferences drawn by state courts from the evidence presented at trial as well as from the trial record. Rashad, at 39, n. 8.

If a state decision rests on an adequate independent state ground of procedural default, federal habeas review is unavailable absent a showing of cause and prejudice or a showing that a miscarriage of justice will result. McCambridge v. Hall, 303 F.3d at 34 ***citing*** Strickler v. Greene, 527 U.S. 263, 282, 119 S.Ct. 1936, 1948-49 (1999).

Applying these standards to the Rhode Island Supreme Court's consideration of the claims raised by Petitioner on appeal of the Rhode Island Superior Court's decision denying post-conviction relief, the State would respectfully suggest that the Rhode Island Supreme Court's finding that Mr. Smith's plea comported with the law and that his plea-counsel did not act in an unconstitutionally deficient manner, were not determinations that "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" (28 U.S.C. § 2254(d)(1); (d)(2)). Indeed, as the State had argued in the State Court proceedings, the alleged "sentence illegality" which forms the basis of Petitioner's complaint, actually inured to the ***benefit*** of the Petitioner, and it is thus somewhat anomalous that it should form a basis of his challenge to his July 13, 1998 plea.

Conclusion

For these reasons, then, the State would respectfully ask that its motion to dismiss Petitioner's ***Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody*** be granted.

**STATE OF RHODE ISLAND**
By Its Attorneys,

**PATRICK C. LYNCH**
**ATTORNEY GENERAL**

/s/Aaron L Weisman_________
**AARON L. WEISMAN #4438**
Department of Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400

## CERTIFICATION

Pursuant to AP 10 of this Court, effective August 1, 2006, I hereby certify that on the 13th day of February, 2007, I filed this document electronically and that it is available for viewing and downloading from the ECF system; and, I placed a copy of the within document in the U.S. mail, postage prepaid, to Kevin J. Smith, at his last known address of 6743 Flat River Road, Greene, Rhode Island 02827.

/s/ Aaron L. Weisman____