**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **KEVIN J. SMITH** | : | |
| | : | |
| **vs.** | : | **C.A. No. 06-533ML** |
| | : | |
| **STATE OF RHODE ISLAND,** | : | |
| **PATRICK LYNCH ESQ., Attorney** | : | |
| **General, and A.T. WALL, Director of** | : | |
| **The Rhode Island Department of** | : | |
| **Corrections, et al** | : | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS OBJECTION TO PLAINTIFF'S MOTION TO ACCESS FUNDS**

Now comes the Rhode Island Department of Corrections, named Defendants in the above entitled matter, and hereby submits this Memorandum of Law in response to Plaintiff, Kevin Smith's, Motion to Access Funds under RIGL § 42-56-22 (b). Defendants respectfully request Defendant's motion to access funds encumbered by the Department of Corrections be denied.

## FACTS AND TRAVEL OF THE CASE

Plaintiff, Kevin Smith, [hereafter referred to as "Plaintiff" or "Smith"] is currently incarcerated at the Medium Security facility of the Adult Correctional Institution [hereafter referred to as the ACI] as a parole violator. On July, 13, 1998, Smith was sentenced to one count of Driving under the Influence of Alcohol or Narcotics, Death Resulting. He received a sentence of 15 years, with 12 to serve and the balance of 3 years suspended with probation. Smith also received a sentence of 10 years suspended with probation for Driving under the Influence, Serious Bodily Injuring Resulting, consecutive to the 15 year sentence. On November 24, 2004, Smith was granted parole

and was placed on Home Confinement. He was re-incarcerated on May 2, 2005, as a parole violator when he tested positive for opiates.

Smith previously had an appeal pending before the Rhode Island Supreme Court relating to his conviction – C.A. No. 04-367. This appeal was handled by the Rhode Island Attorney General's Appellate Division. In conjunction with that appeal, Smith filed a miscellaneous motion requesting he be granted access to his encumbered funds. The Rhode Island Department of Corrections filed a Reply and requested Smith's motion be denied. The Rhode Island Supreme Court denied Smith's motion to access the encumbered funds on January 8, 2006.

Smith now has a matter pending before the Federal District Court for the District of Rhode Island, C.A. No. 06-533ML. The Rhode Island Department of Attorney General is handling that matter; however, in conjunction with that matter Smith has again filed a motion seeking to access his encumbered funds. It is the "Motion to Access Funds under RIGL § 42-56-22(b)" that the Department of Corrections now responds to.

In his motion, Smith seeks access to his encumbered funds for the purpose of paying copying costs and postage to litigate his legal matters. This is the same argument he made to the Rhode Island Supreme Court last year, which resulted in a denial of his motion. For the reasons set forth below, the Department again objects to this request and respectfully asks that the motion be denied.

## I. PLAINTIFF'S MOTION IS BARRED UNDER THE DOCTRINE OF RES JUDICATA

"Federal Courts must give state court judgments the same res judicata effect as is prescribed by the state law wherein the action rises". Griffin v. Rhode Island, 760 F.2d

359, 360 (1st. Cir. 1985); Migra v. Warren City School District, 465 U.S. 75, 104 S. Ct. 892, 898, 79 L. Ed. 2d 56 (1984). In Rhode Island, the doctrine of res judicata operates as an absolute bar to the relitigation of the same cause of action between the same parties, when a final judgment has been rendered on the merits. Griffin, 760 F.2d at 360; Corrado v. Providence Redevelopment Agency, 113 R.I. 274, 320 A.2d 331, 332 (1974). Under this doctrine, a judgment rendered on the merits in the first case is conclusive not only as to the issues that were actually raised and determined, but also as to all matters that could have been raised and determined. Griffin, 760 F.2d at 360; Perez v. Pawtuckett Redevelopment Agency, 111 R.I. 327, 302 A.2d 785, 790 (1973). In order for res judicata to bar a cause of action in Rhode Island, there must be (1) identity of parties, (2) identity of issues, and (3) finality of judgment. Griffin v. Rhode Island, 760 F.2d 359, 360 (1st Cir. 1985).

Plaintiff has previously litigated this same issue in the Rhode Island Supreme Court and his motion was denied. The parties to the motion were identical, the issues were identical, and the decision of the Supreme Court was final. Therefore, Plaintiff's current motion should be denied based on principles of res judicata.

## II. DEPARTMENT OF CORRECIONS POLICY RELATING TO INMATE ACCOUNTS AND RIGL § 42-56-22(b).

The DOC has written policies relating to an inmate's trust account, access to the funds in the account, and the payment by inmates for copying and postage expenses incurred for litigation. A review of these polices is necessary to address this motion.

Under RIGL § 42-56-22, an inmate may work, at the discretion of the Director of the DOC, or his designee, within the facility in which he is incarcerated. Money earned by an inmate is credited to his or her inmate account and may be used by the inmate in accordance with the rules and regulations of the institution. RI Gen. Law § 42-56-22. "However, there shall be maintained on account at all times at least twenty-five percent (25%) of the earnings of each prisoner up to a maximum of one hundred dollars ($100.00) for those persons serving a sentence of life imprisonment without parole….., and up to a maximum of five hundred dollars ($500.00) for all other prisoners; those funds to be turned over to the prisoner at the time of his or her release from the institution." RI Gen. Law § 42-56-22. Section (b) states "nothing contained in this section shall prevent the use of the funds in the accounts for the payment of court fees and court costs required for filing, prosecution, and defense of any action." R.I.Gen Law § 42-56-22(b).

The underlying purpose of the accrual of 25% of the funds, also referred to as the encumbered funds, is rehabilitative in nature and ensures that at the time of release an inmate has some financial means at his disposal. Once an inmate accrues $500.00 in the account, all future money earned by the inmate is at his or her disposal for use in accordance with DOC policy.

Also in accordance with DOC policy # 13.03-1, inmates needing to copy legal documents to pursue legal claims may do so. Inmates with no funds in their unemcumbered account are not precluded from making copies. The DOC allows for the copying, keeps a record of the copying expense (5 cents per copy), and maintains that record by showing a negative balance in the inmates open account. If the inmate earns a

wage, or if money is deposited in the inmate's account, 50% of those funds are applied to the negative balance. The other 50% is available to the inmate to use in accordance with DOC policies, including purchases at the prison commissary. If the open account is depleted to a zero balance, the inmate is not denied access to a copy machine; he simply accrues a negative balance. At no time is an inmate denied the right to copy legal documents to litigate his claims. He is given copying access which is reflected in a negative balance in his open account.

To an even greater extent the same holds true for postage. The Department's procedure for handling legal mail does not deny an inmate a right to mail legal documents due to indigency or a lack of funds. Inmates may purchase stamps at the commissary to mail documents. If an inmate has no means to pay for the postage, it is mailed out at the Department's expense. At no time is an inmate restricted from mailing legal materials because he lacks the funds to pay for postage.

## III. RIGL § 42-56-22 AS PART OF THE REHABILATIVE PROCESS

The above information would seem to beg the question, why not let the inmate access his encumbered account? It actually benefits the Department financially to remove money from an inmate's encumbered account to pay for expenses otherwise incurred by the Department. However, removal of funds from the encumbered account, except in those instances specifically granted by statute, violates the statutory provisons of RIGL § 42-56-22 and is counter-productive to the rehabilitative process. The underlying purpose of the encumbered funds is to ensure that upon release, inmates have some financial resources.

DOC policy restricting access to the encumbered funds, except where defined by RIGL § 42-56-22, is consistent with the legitimate penological purpose of rehabilitation. "A prison regulation impinging on an inmate's constitutional rights is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78; 108 S.Ct. 2254; 96 L. Ed. 2d 64 (1987); Lewis v. Casey, 518 U.S. 343; 116 S. Ct. 2174; 135 L. Ed. 2d 606 (1996). The department takes the position that Smith has no constitutional right to access the encumbered funds; however, even if that were so, the restricted access to those funds is legislatively mandated, and benefits both the defendant in the long-term, as well as the penological interest of the Department in the rehabilitation of inmates. Therefore, the policy against accessing the funds for copies and postage should be upheld.

In Keenan v. Vose, the Rhode Island Supreme Court provided analysis of RIGL § 42-56-22 and held that the wording of this statute was plain and unambiguous. Keenan v. Vose, 634 A.2d 866, 868 (R.I. 1993). In Keenan the court held the terms "court costs" and "court fees" did not include attorney's fees, and therefore the account could not be accessed to hire an attorney. Keenan, 634 A.2d at 868. "In attempting to construe the legislative intent underlying the prohibition against utilization of this [$500.00] sum……one must consider whether the General Assembly…..sought to limit access to the Rhode Island court system. We do not believe that this was the intent." Keenan, 634 a.2d at 868. Rather, it appears the Legislature was attempting to insulate this fund from a challenge to the prisoner's claimed state of indigence. Keenan, 634 A.2d at 868 – 869. It is the position of the Department of Corrections that the legislative intent of this statute

is to provide the inmate with the funds held for his benefit, upon his release from the ACI, not before.

The department also challenges the Smith's factual assertion that he needs access to these funds for copying and postage to prosecute his habeas corpus petition. A review of Smith's inmate account indicates that he has worked at various jobs during his incarceration, including library law clerk and porter, and received a wage for these jobs. From January 2006 to the present, Smith has incurred approximately $65.00 in legal copies expenses. At .05 cents per copy, that is approximately 1300 copies. He has also utilized the prison commissary to make numerous purchases.[1] There is no indication that Smith is in anyway restricted in his ability to copy legal materials or mail legal documents.

## IV. CONCLUSION

Smith's motion to access encumbered funds should be denied based on:

1) the doctrine of res judicata bars his re-litigation of this issue; 2) that he is in no way prejudiced by his inability to access his encumbered funds in that he is not denied access to copies or postage; 3) that the purpose of the encumbered funds is rehabilitative in nature and consist with a valid penological purpose; 4) that release of the funds is defined by statute; and 5) that the factual assertions made by defendant are questionable based on a brief review of his inmate account. Therefore, the Department of Corrections respectfully requests that Plaintiff's motion be denied.

[1] Smith's inmate account is summarized here. The copies of the account ledger are available to the court upon request.

Submitted by:

s/sKathleen M. Kelly, #5501
Senior Legal Counsel
Dept. of Corrections
40 Howard Ave.
Cranston, RI 02920
(401) 462-2546/ fax (401) 462-2583

**Certification**

I hereby certify that a true copy of this Reply and Objection was sent inter-departmental mail to Kevin Smith, P.O. Box 8274, Cranston, RI, 02920 on the 23rd of Feburary, 2007.

s/s Kathleen M. Kelly