TRANSCRIPT OF 22 APRIL 1999

SUPERIOR COURT RULE #35 MOTION TO CORRECT/REDUCE/MODIFY

EXHIBIT # 1

Case #06-553ML

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

KENT, Sc. SUPERIOR COURT

| | | |
|---|---|---|
| STATE OF RHODE ISLAND | ) | |
| | ) | KM/04-0194 |
| vs | ) | K2/97-0399A |
| | ) | KM/03-0971 |
| KEVIN SMITH | ) | |

**HEARD BEFORE**

**THE HONORABLE JUSTICE HENRY GEMMA**

**APRIL 22, 1999**

**APPEARANCES:**

HELEN ALTOMARI, SPECIAL ASSISTANT ATTORNEY GENERAL, ....................for the State

PATRICK BURKE, ASSISTANT PUBLIC DEFENDER, ..................For the Defendant

## CERTIFICATION

I, Sandra J. Delaney, hereby certify that the succeeding pages 1 through 13, inclusive, are a true and accurate transcript of my stenographic notes.

Sandra J. Delaney
Court Reporter

APRIL 22, 1999

MORNING SESSION

THE CLERK: State your name for the record, please.

THE DEFENDANT: Kevin Smith.

THE CLERK: Your date of birth October 27, 1956?

THE DEFENDANT: Yes, it is.

THE CLERK: Your current home address is 6743 Flat River Road, Coventry, Rhode Island.

THE DEFENDANT: Yeah.

THE CLERK: Your Honor, the defendant's here on case K2/97-0399A on a motion to modify sentence.

THE COURT: Mr. Smith, you filed a motion to modify your sentence. You wrote me a letter which I received on April 5th of this year, and I also received a number of others letters that were written in your behalf.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Smith, I will hear what you have to say.

THE DEFENDANT: Well, I have prepared a statement for the Court. Your Honor, I am here before this Court to request a sentence modification. The reasons for this request are outlined in my previous letter to the Court. I felt the need to speak about this terrible accident in the hopes that my request will be granted. My wife, Ann, has always told me that if I continued to

drink I would either kill someone or end up in prison. It's sad to say she was right on both counts.

I am here asking this Court for a chance to prove my commitment to the community and family of the victim. I can never replace Mrs. Demers, and I don't think I can ever remove the pain and anguish I have caused her family. But I do believe that I can be a valuable member to society. In the past I have served the community in many different capacities. I have been a lifesaver leader, a father, a husband. I have never taken the life of anything on purpose. I have strived to become a valid member of my community and as well as my country.

I have not been a perfect person, and I don't think many people can claim to have been one. So with this in mind I am asking the family of the victim, please, understand that I never meant to harm anyone, and I am truly sorry for taking the life of their loved one. Ever since the accident I have spent many anxious, sleepless hours thinking about the victims and the pain I have caused their family. I have thought about how I would feel if this had happened to me, and I would be heart broken and angry. I cannot express my sorrow and sympathies towards the family enough. I know that it may seem too late to express how I feel about this

tragic event, but I feel that the family must know how what I have done has not only hurt their family, it's destroying mine.

Your Honor, as I have said, it may seem risky to allow my modification, but I would like to point out I was on bail for over a year and a half and was always available at court. My children and my family are my life. I can't help them in this time of their need. My family will be destroyed. The family of the victim had said at the sentencing Mrs. Demers was a family oriented person and everything centered on the family. I believe the same thing, and I don't believe she would have allowed another family to be destroyed if she could help them.

I have made a terrible mistake in judgment and caused the death of another human being, and nothing I can say can ever change that. But there are things that could be said to other people that would possibly change their lives to avoid the mistake in judgment that I made. Please, allow me to change, to be a father and husband to my family as well provider and leader to my sons. That's it, Your Honor.

THE COURT: Mr. Burke, do you wish to add anything to that?

MR. BURKE: Judge, I, the only thing I'd add, the

Court initially had sentenced Mr. Smith, was that it sentenced him to 12 years, and it recommended that after he served one sixth of his sentence he'd be eligible for work release. Really, I think what Mr. Smith's asking for in the modification is that he be allowed to move to work release earlier to, one, to help his family out, to help pay his wife's bills. As he notes in the letter that he wrote to the Court, to assist them in paying these bills. If he gets work release, he can work during the day, spend the night in prison and allow him to take some of the money that he earns, some of the money will go to the prison system as part of the requirement under the statute, and the other money he can ship home to his wife to help with his children.

Judge, right now he's serving his sentence in maximum security at the prison. He's been there from the time that he was sentenced. A short time after he was sentenced he was classified there based upon the fact ten years or more, must stay in a bed at maximum security. He requested that he be allowed to go into minimum security, and that was denied. He was put in maximum security which in my belief is probably the most, that is in our prison, in our correctional system, that it is the most grimy part of the prison.

People there are going to be doing hard time, hardened criminals.

Since he's been there he's had an opportunity to sign up for a lot of programs, instructional programs. He completed training in industries education to better himself so that when he does get out he has an opportunity to get a better job.

And I'm just asking the Court that he could, not replacing his sentence, his twelve year sentence is going to stay, all I am asking the Court to do is maybe to consider placing him at work release earlier. Not today, I'm not asking for today. Maybe after he completes one year of his sentence. Doing one year at maximum security is, certainly would send a message to others about the seriousness of this offense, but also send a message to Mr. Smith about the seriousness of the law and also allow him to go help his family out. And that's what I think he's asking. Not asking for, the Court to reduce his sentence. He's going to do his twelve years in the correctional system.

THE COURT: You may be seated, Mr. Smith.

Mrs. Altomari, does anybody representing the victim wish to address the Court today?

MRS. ALTOMARI: They do, Your Honor, but if I could have a moment of the Court's time. I disagree with Mr.

Burke, I think what he is asking for is a reduction in his sentence. In fact, the State was prepared to file, pursuant to Rule 35(a), a motion to increase the sentence if the Court were to consider it, about reducing or giving him special treatment and affording him the opportunity to move down to work release. I note in his letter, however, he even asked to have home confinement, which, in fact, is simply outrageous. But it is, in fact, a reduction of his sentence.

The family is here, Your Honor, and they wish to speak to the Court. But I have to say this morning when I was speaking to Mrs. Demers' daughter, something she said to me was very, very compelling. She said that even making this request is cruel, because it makes them, first of all, revisit the whole issue of the sentence and what was appropriate. Secondly, by pleading the medical condition of his wife, who they genuinely feel sorry for, anyone would feel sorry for, but now they feel guilty because somehow he's making them think now that it's their fault that his wife is suffering when the only responsibility here, obviously, is his own. His wife's condition didn't stop him, which was the same, I would imagine, at the time, didn't stop him from getting behind the wheel, almost twice the legal limit, killing Mrs. Demers and

seriously injuring Mrs. McGregor who is here as well.

Mrs. McGregor has something to say, Your Honor, and she wanted me to -- she says he hasn't served enough time, and that frankly doesn't think he should be given any special consideration whatsoever. Secondly, Mrs. McGregor says that the sentence should be stricter so people would be afraid to get behind the wheel to cause that, the suffering she's obviously undergone, having been seriously injured herself, injuries which she will have the rest of her life, and losing her sister.

The critical thing here, though, Your Honor, is that this plea was entered into by agreement, by agreement with the defendant and the family. And I suggest to the Court that it's not even appropriate to consider any modification of without agreement, and I can assure the Court they are not in agreement with any modification of the sentence. And I think the grandson of Mrs. Demers would like to address the court.

THE COURT: Would you please state your name for the record.

MR. HOCKHOUSEN: Mark Hockhousen, H-o-c-k-h-o-u-s-e-n.

I can't talk, I'm sorry.

MRS. ALTOMARI: That's quite all right, Mark.

MR. HOCKHOUSEN: Again, just bringing this motion is cruel.

MRS. ALTOMARI: The other members of the family can't, they want to speak to you, but they can't because it's too emotional. If I could Your Honor, he has typed this out, I'd like to read it to the court.

Your Honor, we the family of Marie Demers had stood in opposition to Kevin Smith's petition for the Court to alter his sentence. Although we are sympathetic to the family and the effect that it has on them, we steadfastly believe he should serve out his original sentence. The following are a few reasons that support our belief.

As we pointed out in our initial victim impact statement at the time of Kevin Smith's original sentencing, we feel it's imperative that the courts and legislators continue to impose strict penalties for driving while intoxicated offenses. A strict penalty is the only way you're going to get people to think twice before getting behind the wheel of a vehicle while they're intoxicated.

Kevin Smith at the offense of driving while intoxicate was convicted by two factors. The first innocent victim, my grandmother, was killed due to his negligence and callousness. And the other victim,

Constance McGregor, was severely injured in the same accident. Constance McGregor was an artist, and she's not been able to paint since the accident due to her injuries.

Secondly, this was not Kevin Smith's first offense of drunk driving. He was a repeat offender. The penalty should be stricter for repeat offenders. I have a copy of a petition to support the bill on alcohol legislation which was proposed by John Alkot of the governor's office on behalf of Stephen Fairlake to lower the blood alcohol level from .1 to .08, a ban on containers of alcohol in vehicles, make refusing a breathalyzer a more enforceable crime, incarceration for repeat offenders, and make it an additional crime to drive intoxicated with a child in the vehicle. This proposed legislation demonstrates concern of stricter laws and penalties for a DWI offense. Governor Almond has stated that the statistics do not reflect the tragedy of lives altered forever when someone dies because of a drunk driving. It's a terrible way to lose a friend, a spouse or child.

Once again, we do not wish to appear unsympathetic to the Smith family, but almost every convicted person could claim hardship to their family due to their imprisonment for an offense. They should think of

their family and the effect of their action prior to committing a crime. If they cannot afford to spend time in prison or their family cannot afford for them to be in prison, they have an easy choice, do not commit the crime. Their victims do not have a choice. But there must be some kind of healing for their actions, choices that they make. We would not support letting any criminal out of prison earlier due to hardship whether that person was a murderer, rapist or if they kill someone due to driving while intoxicated.

In conclusion, we feel that by you giving the defendant the sentence that he received, Judge, it was making a statement, and an important statement, which needs to be made in order to make our roads a safe place for all families. To reduce the sentence now when he hasn't even spent one year or one twelfth of his sentence would be a true travesty of justice.

Yesterday instead of my grandmother, celebrating my grandmother's birthday, we were at the grave putting flowers on her grave. It was unfair for my family to receive this letter from Kevin Smith on my grandmother's birthday to make us feel guilty about his family's circumstances.

We would like to thank the Court for the courtesy it has extended to us so that we could, so our voices

could be heard.

THE COURT: Mrs. Altomari, does any other member of the descendant's family wish to address the court?

MRS. ALTOMARI: I think they would all like to, Your Honor, but frankly it's too emotional and to difficult to address the Court.

THE COURT: Mr. Smith, when you appeared before me on this case and entered a plea of *nolo contendere*, you struck a bargain with the attorney general, with the victims' family and with the Court. Today you come before this Court asking me to modify the agreement that we all had made when you entered an agreed plea of *nolo contendere*. If the attorney general came before the Court and said, Judge, in retrospect we think twelve years is not an appropriate sentence, we think, Judge, you should sentence him to fifteen years, you would be the first one to say, wait a minute, I struck an agreement with the victims' family, the attorney general and the Court that I should get twelve years, and to suggest that I should get more than twelve years is just unfair and would violate the agreement that I made with all the individuals concerned in this case.

Now, Mr. Smith, you are asking to do exactly that. You got exactly what you bargained for, and to ask the Court today to modify that sentence is unfair to the

other people that were involved in this agreement. I will recognize that when you received a twelve year sentence, you received a harsh sentence. The maximum was fifteen. You entered a plea of *nolo contendere*. You did not force this case to go trial. You accepted your responsibility by entering a plea of *nolo contendere*. And I will acknowledge that twelve years was a hit. But when everyone concluded that twelve years was an appropriate sentence, we factored many things into that sentence.

We considered the sentencing guidelines. We also took into consideration, Mr. Smith, the fact that two people were hurt in this incident by your driving, the victim who died and the victim who survived. We also took into consideration your past criminal history, and what was egregious was the fact you were previously convicted of drunk driving. And I know the attorney general brought to the Court's attention you weren't just a little over the legal limit but more than twice the legal limit. Your blood alcohol level was .201 and .204. You also had some other minor convictions that really did not factor into the sentence. I know you had a violation of banking laws in 1992 which was filed, and you had a domestic assault in 1993 for which you received probation.

But when the Court factored everything into this case, the Court thought that the sentence of twelve years was appropriate. And it was agreed at that time, Mr. Smith, that after you served two years of the twelve year sentence, you would then go to minimum security, work release. It is unfortunate that your wife and your sons are suffering by your incarceration, but everything comes with a price. When you got behind the wheel of a car that fateful date, your alcohol level was more than twice the legal limit. That's the price that you have to pay today.

The defendant's motion to modify his sentence is denied.